## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ORANA S. NEECE,** | ) | |
| Plaintiff | ) | Civil Action No. 2:22cv00003 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | By: PAMELA MEADE SARGENT |
| **Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### *I. Background and Standard of Review*

Plaintiff, Orana S. Neece, ("Neece"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying her claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument; therefore, this case is ripe for decision. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Neece protectively filed her application for DIB[1] on January 9, 2019, alleging disability as of January 18, 2018, based on chronic obstructive pulmonary disease, ("COPD"); atrial fibrillation, ("AFib"); paroxysmal supraventricular tachycardia; radicular syndrome of the lower limbs; rotator cuff problems status-post surgery; ruptured disc; past venous stasis ulcer; hypothyroidism; esophageal reflux; spinal arthritis; osteoarthritis of the knees and back; dyslipidemia; fibromyalgia; fatigue; depression; anxiety; diverticulosis; hypertension; thrombophlebitis; and pain, including knee pain and pain in her hands

---

[1] On May 16, 2014, Neece protectively filed an application for DIB alleging disability as of September 30, 2013. (R. at 144.) By decision dated January 17, 2018, the ALJ denied Neece's claim. (R. at 144-59.) It does not appear that Neece appealed this decision.

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.,* 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same…title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01, at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. § 416.920c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright. See* Program Operations Manual System, ("POMS"), DI 24503.005, available at https://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

The ALJ found the January 2018 decision somewhat persuasive as the evidence not considered in the prior decision did not show a significant change in Neece's health and functional ability. (R. at 20.) The ALJ found the record continued to support a sedentary residual functional capacity based on Neece's physical impairments, but the ALJ included additional limitations based on Neece's shoulder surgery. (R. at 20.) The ALJ noted that, although the record showed Neece had pain resulting in surgery, she did recover and reported her symptoms were well-controlled at post-operative visits, which supported no more than his noted additional left extremity limitations. (R. at 20.)

and thumbs.[2] (Record, ("R."), at 10, 259-60, 288, 306, 313, 316.) The claim was denied initially and upon reconsideration. (R. at 195-207.) Neece then requested a hearing before an administrative law judge, ("ALJ"). (R. at 208-09.) The ALJ held a hearing on May 18, 2020, at which Neece was represented by counsel. (R. at 113-40.)

By decision dated June 30, 2020, the ALJ denied Neece's claim. (R. at 10-22.) The ALJ found Neece met the nondisability insured status requirements of the Act for DIB purposes through June 30, 2018. (R. at 12.) The ALJ found Neece had not engaged in substantial gainful activity since January 18, 2018,[3] the alleged onset date, through her date last insured of June 30, 2018. (R. at 12.) The ALJ determined that, through the date last insured, Neece had severe impairments, namely, left rotator cuff tear, status-post repair; osteoarthritis of the knees; COPD; and degenerative disc disease, but he found Neece did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12, 15.)

The ALJ found that, through the date last insured, Neece had the residual functional capacity to perform sedentary work,[4] except she could frequently reach,

---

[2] At her hearing, Neece alleged the following as severe impairments: low back pain with sciatica; bilateral knee pain; bilateral shoulder pain, primarily the left shoulder; A-Fib; tachycardia; generalized osteoarthritis; fibromyalgia; COPD; and emphysema. (R. at 120.)

[3] Therefore, Neece must show she was disabled between January 18, 2018, the alleged onset date, and June 30, 2018, the date last insured, to be eligible for benefits.

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2021).

but with the left non-dominant upper extremity, she could only occasionally overhead reach; she could occasionally perform postural activities, but frequently balance and never crawl or climb ladders, ropes or scaffolds; and she should avoid concentrated exposure to temperature extremes, humidity, pulmonary irritants and industrial hazards. (R. at 16.) Based on Neece's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that, through the date last insured, Neece could perform her past relevant work as a substance abuse counselor. (R. at 21-22, 135.) Thus, the ALJ concluded that, through the date last insured, Neece was not under a disability as defined by the Act from the alleged onset date of January 18, 2018, through June 30, 2018, the date last insured, and she was not eligible for DIB benefits. (R. at 22.) *See* 20 C.F.R. § 404.1520(f) (2021).

After the ALJ issued his decision, Neece pursued her administrative appeals, (R. at 251), but the Appeals Council denied her request for review. (R. at 1-5.) Neece then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2021). This case is before this court on Neece's motion for summary judgment filed July 12, 2022, and the Commissioner's motion for summary judgment filed August 2, 2022.

## II. Facts

Neece was born in 1952, (R. at 117, 259), which classifies her as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Neece has a college education and past work experience as a substance abuse counselor. (R. at 117-18, 289.) Neece testified at her hearing that she underwent left shoulder arthroscopy followed by physical therapy. (R. at 121-22.) She stated she continued to have difficulty using

her left arm and left shoulder, as she had decreased mobility. (R. at 122.) Neece stated that, when she attempted to reach, to pick up an object or to carry an object, she experienced pain in her left shoulder. (R. at 122.) She stated she was unable to use her left arm for overhead reaching. (R. at 122.) Neece stated that, sometime between 2007 and 2009, she had carpal tunnel surgery on her right hand, but she continued to experience numbness and tingling in her right wrist. (R. at 123-24.) In May 2017 Neece was involved in a motor vehicle accident and suffered injuries to her knees, low back and left shoulder. (R. at 121, 472.) Neece stated that the accident aggravated her back pain, limiting her ability to stand, walk and bend. (R. at 126.) Neece stated she received injections to her left knee for a partial meniscus tear, and between 2017 and 2020, she received four injections in each knee. (R. at 124-25.)

In rendering his decision, the ALJ reviewed records from Leslie E. Montgomery, Ph.D., a state agency psychologist; Dr. Daniel Camden, M.D., a state agency physician; Dr. Thomas M. Phillips, M.D., a state agency physician; William Carne, Ph.D., a state agency psychologist; Quillen ETSU Physicians; Mountain States Medical Group, ("Mountain States"); Appalachian Orthopaedic Associates, ("Appalachian Orthopaedic"); Wellmont Medical Associates; and Mountain View Regional Medical Center, ("Mountain View").

Neece received therapy for hypertension at ETSU Physicians. (R. at 371.) On January 24, 2018, Neece saw Dr. Kais Al Balbissi, M.D., a cardiologist with ETSU Physicians, reporting she was "feeling okay." (R. at 371.) She reported that she experienced palpitations once every four months but denied chest pain and pressure. (R. at 371.) Neece's cardiovascular and pulmonary examinations were normal; her extremities had no edema or varicosities; she was fully oriented; and her mood and

affect were normal.[5] (R. at 373.) It was noted that Neece's hypertension was controlled, and her COPD was stable on medications. (R. at 373.) Neece's echocardiogram was normal. (R. at 377.)

On January 25, 2018, Neece saw Dr. Tiffani Nichols, D.O., a physician with Mountain States, who noted that Neece's hypertension, AFib, COPD and anxiety were stable, well-controlled and asymptomatic, respectively. (R. at 394.) Neece was in no respiratory distress; her heart rate and rhythm were normal; her extremities had no cyanosis; her insight and judgment were intact; and her affect was normal. (R. at 398.) Dr. Nichols diagnosed AFib, COPD, hypertension, fibromyalgia, depression with anxiety and generalized osteoarthritis. (R. at 399.)

On March 14, 2018, Neece saw Lawrence Livengood, PA-C, a certified physician's assistant at Appalachian Orthopaedic, reporting left shoulder and bilateral knee pain, but she denied muscle aches and weakness, back pain and swelling in her extremities. (R. at 476, 479.) Neece was fully oriented; she had a normal mood and affect; she had tenderness, medially, to palpation in her knees, but good range of motion, good strength and no evidence of an antalgic gait; she had mild crepitus with active motion, but no instability; her neurovascular examination was intact; she had tenderness in her left shoulder and pain with active motion with reduced strength, and she was somewhat limited due to pain in flexion and abduction; she had pain and weakness with bicep testing; she had intact sensation; she had a good pulse in her wrist; and she had a positive empty can test. (R. at 479.) Neece was diagnosed with bilateral osteoarthritis of the knee and left rotator cuff tear. (R. at 479.) Injections to Neece's knees were administered. (R. at 479.) On

---

[5] Neece was next seen at ETSU Physicians on November 28, 2018. (R. at 1318-20.) At that time, her examination findings were normal, and it was noted that Neece's symptoms were stable. (R. at 1320.)

March 23, 2018, Neece reported "feeling much better" after her injections, but she reported persistent pain and weakness with overhead activity in her left shoulder, and she was scheduled for left shoulder surgery. (R. at 469-73.)

On April 4, 2018, Neece saw Livengood, reporting bilateral knee pain. (R. at 466.) Neece reported her knee injections and medication were "helping greatly" and that, although she still had "mild" symptoms, they were "very tolerable." (R. at 469.) Neece was alert and fully oriented; she had tenderness, medially, to palpation in her knees, but good range of motion, good strength and no evidence of an antalgic gait; she had mild crepitus with active motion, but no instability; and her neurovascular examination was intact. (R. at 469.) Livengood diagnosed bilateral osteoarthritis of the knee. (R. at 469.)

On April 9, 2018, Neece underwent left shoulder arthroscopy and rotator cuff repair. (R. at 483-86.) On April 16, 2018, despite requesting additional narcotic medication, Neece reported that she had good pain control. (R. at 465.) Dr. John H. Phillips, M.D., a physician with Appalachian Orthopaedic, referred Neece for physical therapy[6] and prescribed Ultram. (R. at 466.)

On April 25, 2018, Dr. Nichols noted that Neece's hypothyroidism, AFib, COPD and anxiety were stable, well-controlled and asymptomatic. (R. at 384.) Neece had a normal, positive attitude; she was in no respiratory distress, and her lungs were clear to auscultation, bilaterally; her heart rate and rhythm were normal;

---

[6] On April 26, 2018, Neece began physical therapy, at which time she had very reduced range of motion and strength on her left and a reported pain level of 5/10. (R. at 424-26.) Neece steadily improved with physical therapy, and by the end of May 2018, she showed improvements in range of motion and strength, reported only 1/10 pain and discontinued physical therapy in favor of a home exercise program. (R. at 408-10.)

her extremities had no cyanosis; her left shoulder was in a brace; her insight and judgment were intact; and her affect was normal. (R. at 388-89.) On May 21, 2018, Dr. Phillips noted that Neece was "largely recovered" and advised that she could carry out activities as tolerated. (R. at 459-63.)

On June 24, 2018, Neece was seen at Wellmont Medical Associates Urgent Care for complaints of an abrasion to her left arm. (R. at 863-77.) She was fully oriented; her musculoskeletal and pulmonary examinations were normal; she had a tear to her left forearm; and her mood, affect and behavior were normal. (R. at 867-68.) Neece was diagnosed with skin tear of the left forearm without complication. (R. at 868.)

On June 28, 2018, Dr. Phillips recorded that Neece had "no pain" almost three months post-surgery. (R. at 459.) Neece's main complaint had to do with hallux valgus in her feet, an issue that was "not highly bothersome." (R. at 459.) Neece demonstrated full range of motion of both shoulders; she had a non-antalgic gait; her feet demonstrated bilateral hallux valgus with bunion deformity, slightly more pronounced on the left; and her sensation, motor function, pulses and capillary refill were normal and symmetric, bilaterally. (R. at 459.) Dr. Phillips noted Neece's feet could be treated without surgery with accommodative shoe wear and toe spacers and that Neece could carry out activities as tolerated. (R. at 459.) Dr. Phillips diagnosed disorder of bursa of the shoulder region and right hallux valgus and bunion. (R. at 459.)

On July 25, 2018, Dr. Nichols noted that Neece's hypertension, AFib, COPD and anxiety were stable, well-controlled and asymptomatic. (R. at 1009.) Neece was alert and fully oriented; she had a normal, positive attitude; she was in no respiratory

distress, and her lungs were clear to auscultation, bilaterally; her heart rate and rhythm were normal; her extremities had no edema or cyanosis; her insight and judgment were intact; and her affect was normal. (R. at 1013.)

On September 5, 2018, Neece saw Livengood, reporting bilateral knee pain. (R. at 983.) Neece reported improvement with her recent injections, medications and home exercise program, but she reported some breakthrough pain, as well as pain with sitting, standing and using stairs. (R. at 986.) Neece was alert and fully oriented; her knees had normal alignment; she had tenderness, medially, to palpation in her knees, but good range of motion, good strength and no evidence of an antalgic gait; she had mild crepitus with active motion, but no instability; and her neurovascular examination was intact. (R. at 986.) Livengood administered injections to both knees. (R. at 986.)

On October 24, 2018, Neece saw Dr. Nichols, reporting worsening gastroesophageal reflux disease, ("GERD"), symptoms. (R. at 998-1005.) She stated that her knee, shoulder and back pain, as well as her anxiety, were stable with medication. (R. at 999.) Neece was in no respiratory distress, and her lungs were clear to auscultation, bilaterally; her heart rate and rhythm were normal; her extremities had no cyanosis; her insight and judgment were intact; and her affect was normal. (R. at 1003.)

On January 23, 2019, Dr. Nichols noted that Neece's AFib, COPD, depression and anxiety were stable and asymptomatic. (R. at 987-88.) Neece was in no respiratory distress, and her lungs were clear to auscultation, bilaterally; her heart rate and rhythm were normal; her extremities had no cyanosis; her insight and judgment were intact; and her affect was normal. (R. at 992.)

On February 28, 2019, Leslie E. Montgomery, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Neece had no limitations in her ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage herself. (R. at 170.) Montgomery noted Neece's anxiety and depression diagnoses. (R. at 170.) Montgomery noted that, during the relevant time period, Neece's examinations were benign, and she did not report symptoms. (R. at 170.) On April 13, 2019, William Carne, Ph.D., a state agency psychologist, completed a PRTF, which mirrored that of Montgomery. (R. at 185.)

On February 28, 2019, Dr. Daniel Camden, M.D., a state agency physician, completed a medical assessment, finding Neece could perform medium[7] work. (R. at 172-74.) He found Neece could stand, walk and sit six hours each in an eight-hour workday; frequently push/pull with her left upper extremity; occasionally climb ladders, ropes and scaffolds and crawl; frequently reach overhead with her left shoulder; avoid concentrated exposure to temperature extremes, humidity and pulmonary irritants. (R. at 172-74.) Dr. Camden found Neece had no visual or communicative limitations. (R. at 173.) He noted Neece presented with a combination of impairments, with her most severe being status-post left shoulder arthroscopy. (R. at 174.) Dr. Camden noted Neece's COPD, cardiac dysrhythmia, hypothyroidism, hypertension and fibromyalgia were stable without any symptoms causing functional limitations. (R. at 174.) He noted that, during the relevant period, there were no findings concerning for or complaints of bilateral lower extremity radiculopathy, ruptured discs, venous stasis ulcer, GERD, degenerative disc disease, dyslipidemia, diverticulosis, phlebitis or thrombophlebitis. (R. at 174.) Dr. Camden

---

[7] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2021).

noted Neece's June 2018 orthopedic examination, which indicated full shoulder range of motion without pain, normal gait and bunion formation. (R. at 174.)

On April 15, 2019, Dr. Thomas M. Phillips, M.D., a state agency physician, did not render an opinion as to Neece's physical limitations because he found there was insufficient evidence during the relevant time period to evaluate Neece's COPD, radicular syndrome of the lower extremities, venous status ulcer, fibromyalgia and thrombophlebitis. (R. at 183-84.) He noted Neece's mental impairments were not severe. (R. at 183.)

On April 24, 2019, x-rays of Neece's lumbar spine showed mild anterolisthesis at the L4-L5 level and scattered spondylitic spurring and degenerative changes in the mid and lower facets. (R. at 1129.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2021). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Neece filed her application in January 2019; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions here.[8] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give

---

[8] 20 C.F.R. § 404.1520c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. § 404.1520c(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior administrative medical findings in a claimant's case. *See* 20 C.F.R. § 404.1520c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 404.1520c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[9] *See* 20 C.F.R. § 404.1520c(b)(2).

---

[9] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant,

Neece's sole argument on appeal is that the ALJ erred by failing to give appropriate credence to her testimony and properly assess the effect of pain on her ability to perform substantial gainful activity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.)

Neece argues that her testimony that she suffers from severe and chronic daily pain, making it impossible for her to sit, stand, walk or concentrate for prolonged periods, is supported by the objective medical evidence and her continued treatment for chronic pain. However, Neece argues that the ALJ failed to properly consider her testimony. Contrary to Neece's argument, the Commissioner contends that substantial evidence supports the ALJ's finding that Neece's allegations of disabling chronic back pain are not entirely consistent with the medical and other evidence of record. As the Commissioner stated in her brief, apart from her hearing testimony, Neece did not cite to record evidence that would support further limitations or otherwise undermine the ALJ's decision.

The Fourth Circuit recently reiterated the two-step framework, set forth in 20 C.F.R. § 404.1529 and Social Security Ruling, ("S.S.R."), 16-3p, 2017 WL 5180304 (Oct. 25, 2017), for evaluating a claimant's symptoms, such as pain.[10] *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020). First, the ALJ must determine whether objective medical evidence[11] presents a "medically determinable"

---

specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b)(3) (2021).

[10] "Symptoms" are defined in the regulations as a claimant's own description of his medical impairment. *See* 20 C.F.R. § 404.1502(i) (2021).

[11] The regulations define "objective medical evidence" as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2) (2021).

impairment" that could reasonably be expected to produce the claimant's alleged symptoms. *Arakas*, 983 F.3d at 95 (citations omitted); *see also Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether she is disabled. *See Arakas*, 983 F.3d at 95 (citations omitted); *see also Craig*, 76 F.3d at 595. Because "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques," ALJs must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. S.S.R. 16-3p, 2017 WL 5180304, at *5; *see also* 20 C.F.R. § 404.1529(c)(2); *Craig*, 76 F.3d at 595. In other words, "while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Craig*, 76 F.3d at 593.

However, the Fourth Circuit has held that objective medical evidence and other objective evidence are "crucial" in evaluating the second prong of the symptom analysis test. *Craig*, 76 F.3d at 595. In *Craig*, the Fourth Circuit stated, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." 76 F.3d at 595. Specifically, the ALJ must consider "any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [her

medical] history, the signs and laboratory findings, and statements by [her] medical sources or other persons about how [her] symptoms affect [her]." 20 C.F.R. § 404.1529(c)(4) (2021). The regulations direct that a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ stated as follows in his decision:

… [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.

… In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable … impairment(s) … that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying … impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(R. at 16.) In his decision, the ALJ found that the objective findings did not corroborate the allegations to the disabling extent as asserted by Neece. (R. at 18.) The ALJ noted the facts in the record did not dispute that Neece had conditions, which singly or in combination, may cause her difficulty. (R. at 18.) He further noted

that the evidence suggested that Neece's symptoms "may not exist at the level of severity" assumed by her hearing testimony and "may have other mitigating factors" against their negative impact on her ability to engage in work activity. (R. at 18.) The ALJ noted that his residual functional capacity finding gave adequate weight to Neece's complaints, as determined to be consistent with the evidence. (R. at 18.) He noted that his residual functional capacity finding adequately addressed the location, duration, frequency and intensity of Neece's alleged symptoms, as well as precipitating aggravating factors. (R. at 18.) More specifically, the ALJ noted that his residual functional capacity finding accounted for Neece's history of shoulder repair, bilateral knee pain, degenerative disc disease and COPD, as well as her treatment and subjective allegations of pain. (R. at 18.)

Thus, the ALJ explicitly set out the appropriate, two-step legal framework for considering Neece's allegations of pain in his decision. After stating the framework, the ALJ recited Neece's testimony that she suffered from low back pain with sciatica, bilateral knee and shoulder pain, tachycardia, fibromyalgia, emphysema and COPD. (R. at 16.) He further noted Neece's testimony that, despite undergoing surgeries, physical therapy and injections, she continued to suffer from residual back, bilateral knee and left shoulder pain from injuries she sustained in a 2017 motor vehicle accident. (R. at 16-17.)

The ALJ next turned to an analysis of Neece's symptoms, stating, in part, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. …" (R. at 17.) Thus, the ALJ satisfied the first part of the two-part test for analyzing Neece's allegations about her symptoms. *See Arakas*, 983 F.3d at 95; *Craig*, 76 F.3d at 594. The real issue, therefore, is whether he

correctly analyzed Neece's pain under the second part of this test. For the reasons that follow, I find that he did.

In his decision, the ALJ stated, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 17.) To support this finding the ALJ noted that, in January 2018, Neece reported "doing well" with her current pain medications, and her examinations were normal. (R. at 17.) In March 2018, Neece reported to her orthopedist that treatment helped improve her symptoms, and examinations of her knee and left shoulder were relatively benign. (R. at 17.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). The ALJ discussed Neece's April 2018 left shoulder arthroscopy, noting that she steadily improved with physical therapy and that, within three months of the surgery, she reported no pain. (R. at 17.)

The ALJ also observed that the record contained no evidence of widespread pain or trigger point findings to support her fibromyalgia diagnosis, that she typically had normal physical examinations without tender point findings, and she reported doing well. (R. at 13.) The ALJ noted that, although Neece complained of knee pain, she received minimal treatment; she had few recorded abnormalities; she received relief from conservative treatment; and she did not require surgery or more aggressive treatment. (R. at 19.) In addition, the ALJ noted Neece's distant history of back surgery, but observed that she did not have continued treatment for a back impairment; she did not complain of back pain during the relevant time period; and she had normal examinations. (R. at 19.) Finally, the ALJ explained that Neece's

COPD was stable during the relevant period, that she denied symptoms and sought only routine care. (R. at 19.)

In addition, pursuant to *Albright* and A.R. 00-1(4), the ALJ considered the prior administrative medical findings and the prior 2018 decision. (R. at 20.) As previously noted, the ALJ found the January 2018 decision somewhat persuasive, as the evidence not considered in the prior decision did not show a significant change in Neece's health and functional ability. (R. at 20.) However, the ALJ further noted that the record continued to support a sedentary residual functional capacity, but with additional limitations based on Neece's shoulder surgery. (R. at 20.) The ALJ noted that, although the record showed Neece had pain resulting in surgery, she did recover and reported her symptoms were well-controlled at post-operative visits, which supported no more than his noted additional left extremity limitations. (R. at 20.)

In making his residual functional capacity finding, the ALJ found the state agency medical consultants' findings unpersuasive because Dr. Camden's finding that Neece could perform medium work was inconsistent with the record, and Dr. Phillips's finding that there was insufficient evidence was not an actual opinion regarding Neece's ability to function. (R. at 21.) The ALJ noted that Neece's orthopedist, Dr. J. Phillips, opined that she could return to activities as tolerated. (R. at 21.) The ALJ found this opinion unpersuasive, as Dr. J. Phillips rendered this opinion as part of his treatment notes without reviewing Neece's impairments as a whole. (R. at 21.) In addition, he noted this opinion was vague in nature, as the term "return to activities as tolerated" is not well defined by his treating notes. (R. at 21.) The record shows that Neece's examinations routinely showed that she was in no respiratory distress, and her lungs were clear to auscultation, bilaterally; her heart rate and rhythm were normal; her extremities had no edema or cyanosis; her knees

had normal alignment; she had tenderness, medially, to palpation in her knees, but good range of motion, good strength and a normal gait; she had mild crepitus with active motion, but no instability; and her neurovascular examination was intact. In addition, Neece reported that her knee, shoulder and back pain were stable with medications. *See Gross,* 785 F.2d at 1166.

For all the above-stated reasons, I find that the ALJ did not improperly disregard Neece's statements about her pain. To the contrary, the ALJ thoroughly considered such statements and credited them to the extent they were consistent with the record as a whole. As stated herein, in making the determination at the second prong of the symptom evaluation framework, the ALJ must examine the entire case record, including the objective medical evidence, the claimant's statements about the intensity, persistence and limiting effects of her symptoms, statements and other information provided by medical sources and other persons and any other relevant evidence in the claimant's record. *See* S.S.R. 16-3p, 2017 WL 5180304, at *4. Here, the ALJ reviewed Neece's relevant medical history and her subjective allegations before finding her statements regarding the severity of her limitations were not entirely credible because they were not fully supported by the objective medical evidence and her treatment history. The ALJ was entitled to find that the objective medical evidence outweighed Neece's subjective statements, and he provided a sufficient rationale for doing so. It is well-supported that a reviewing court gives great weight to an ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence of record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Here, the ALJ's decision was thorough and applied the proper legal standard, and this court will not reweigh the evidence.

For all the foregoing reasons, I find that the ALJ's evaluation of Neece's pain was based on a correct legal standard and is supported by substantial evidence. Based on the same evidence stated above, I further find that substantial evidence supports the ALJ's residual functional capacity finding and ultimate finding that, through the date last insured, Neece was not disabled under the Act and not entitled to benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the ALJ's analysis of Neece's subjective complaints of pain;

2. Substantial evidence exists in the record to support the ALJ's consideration of the opinion evidence;

3. Substantial evidence exists in the record to support the ALJ's residual functional capacity finding; and

4. Substantial evidence exists in the record to support the Commissioner's finding that, through the date last insured, Neece was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Neece's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    May 9, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE